UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **CHARLES S. BELL** | **CIVIL ACTION NO. 14-02772** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **L.P. BROWN COMPANY, INC.** | **MAG. JUDGE KAREN L. HAYES** |

**RULING**

This is a declaratory judgment action brought by Plaintiff Charles S. Bell ("Bell") against Defendant L.P. Brown Company, Inc. ("L.P. Brown"). Bell seeks a declaratory judgment from this Court that the Non-Compete Agreement that he signed with L.P. Brown, his former employer, "is of no legal import as a matter of law, that the acknowledgment . . . [he signed] does not constitute an express, knowing and voluntary agreement to and ratification of the choice of law clause of the Agreement under R.S. 23:921(A)(2), that the agreement is unenforceable under R.S. 23:921 *et seq.* and that [Bell] is under no obligation to . . . L.P. Brown . . . because of said agreement." [Doc. No. 1-1, p.4]. L.P. Brown filed an Answer and Counterclaim [Doc. No. 1-1, p. 11], asserting that the Non-Compete Agreement is governed by Tennessee law based on the parties' agreement and, in the alternative, under an application of Louisiana Civil Code article 3515, *et seq.* L.P. Brown further prayed for injunctive relief to obtain Bell's compliance with the Non-Compete Agreement and for damages if the evidence showed that Bell violated the Non-Compete Agreement.

On October 6, 2014, Bell filed a Motion for Summary Judgment [Doc. No. 6], moving the Court to declare the Non-Compete Agreement at issue to be null and void and to dismiss L.P. Brown's counterclaim with prejudice at its costs. L.P. Brown timely filed an opposition

memorandum [Doc. No. 11] and, with leave of Court, a supplemental affidavit [Doc. No. 17]. Bell filed a reply memorandum [Doc. No. 22]. For the following reasons, the Motion for Summary Judgment is GRANTED.

**I.      FACTS AND PROVISIONS OF NON-COMPETE AGREEMENT**

Bell, who is in sales, was formerly employed by Leggett & Platt Company ("Leggett & Platt") in its International Fiber Packaging division. Leggett & Platt had a global business in the cotton and fiber industry.

On January 29, 2010, L.P. Brown, which has its principal place of business in Memphis, Tennessee, purchased certain assets of the International Fiber Packaging division. After the purchase, L.P. Brown offered employment to Leggett & Platt's former employees, subject to the requirement that certain employees execute a non-compete agreement. Bell, who was in sales, was required to execute this agreement if he wished to be employed by L.P. Brown.

On February 3 and 4, 2010, L.P. Brown representatives met with the former International Fiber Packaging employees at the plant in Florence, Alabama. According to L.P. Brown, the former Leggett & Platt employees who accepted employment, including Bell, became L.P. Brown employees effective February 1, 2010, subject to completion of certain documents.[1]

On February 4, 2010, L.P. Brown tendered a non-compete agreement to Bell. Bell, who had signed the agreement on February 17, 2010,[2] returned it to L.P. Brown on March 8, 2010, while he was in the Memphis, Tennessee office. Doyle Needham signed the agreement on behalf of L.P.

---

[1] Bell contends that he became employed by L.P. Brown effective January 30, 2010. Regardless, this two-day discrepancy does not create a genuine issue of material fact on any of the issues before the Court.

[2] It is unclear where Bell signed the agreement.

Brown the day Bell returned it. The non-compete agreement provides in pertinent part:

> During the term of Employee's employment by Employer and for a period of two years after the termination of his employment . . . the Employee shall not, within any U.S. cotton market, (i) directly or indirectly, for himself or for any other person or business entity, compete with the business of Employer, [or] (ii) become employed by or perform services in any capacity for any person or business entity that competes with the business of Employer.

[Doc. No. 6-3, Exh. 1, ¶ 7]. The non-compete agreement also contains a choice of law provision which states that it "shall be governed by and construed and enforced in accordance with the laws of the State of Tennessee." *Id.* at ¶ 15.

L.P. Brown provided Bell with a company vehicle, computer, and cell phone. The vehicle was purchased in Memphis, Tennessee, and provided to Bell there. The cell phone was shipped from Memphis, Tennessee, and used a Georgia telephone number, which was the same number Bell had used with his former employer. The computer was also purchased in Memphis, Tennessee, and picked up by Bell at that office.

During his employment, Bell also attended sales meetings and company briefings at the Memphis office.

Bell was the only L.P. Brown employee in Louisiana. Bell maintained an office in his home in Ouachita Parish, Louisiana, and had business cards listing his home address. Bell's job function was to visit customer facilities in his territory and have face-to-face interaction. Bell's territory included the Louisiana parishes of Acadia, Avoyelles, Caddo, Calcasieu, Catahoula, Concordia, East Carroll, Franklin, Morehouse, Pointe Coupee, Rapides, Red River, and Vermillion, as well as parts of Mississippi, Tennessee, Missouri, and Arkansas.

On June 16, 2014, Bell tendered his resignation at the L.P. Brown Memphis office, giving

two weeks' notice to L.P. Brown CEO, Charles Jackson ("Jackson"), and Sales Manager, Bill King ("King"). Jackson reminded Bell of the non-compete agreement. Bell asked for and was provided a copy of the agreement.

The following day, June 17, 2014, Bell returned to the office. After an exit interview, Bell signed an Acknowledgment that the interview had been conducted. As part of the Acknowledgment, Bell agreed that "[t]he procedures concerning . . . non-compete restrictions . . . has [sic] been explained to me." [Doc. No. 6-4 Exh. 2]. Bell requested that Jackson release him from the terms of the non-compete agreement, but Jackson refused.

On June 20, 2014, Brown's last day of employment, he returned his computer, cell phone, and vehicle to the Memphis office. He again requested that Jackson release him from the non-compete agreement, and Jackson again refused. However, Jackson did exchange emails with the national sales manager for Bell's prospective employer, Samuel Strapping Systems, Inc., in an attempt to reach some type of resolution, but no agreement was apparently reached.

On September 21, 2014, Bell brought suit in this Court.

## II. LAW AND ANALYSIS

### A. Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is

"material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Thus, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)(citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248(1986)).

In this case, the facts are generally not in dispute. Rather, the parties dispute the significance of those facts under the law. Accordingly, this matter may properly be resolved on summary judgment.

**B.      Choice of Law**

Bell moves this Court, first, for a declaration that the choice of law provision in his non-compete agreement is null and void under LA. REV. STAT. 23:921A(2) because he did not expressly, knowingly, and voluntarily agree to or ratify that provision at the time of his resignation.

In opposition, L.P. Brown argues that Bell "begins with the faulty assumption that Louisiana law applies to the non-compete agreement" and that "approach bypasses the necessary choice of laws

analysis" the Court must perform. [Doc. No. 11, p. 1]. L.P. Brown contends that the choice of law analysis "supports the application of Tennessee law," which is the law designated in the non-compete agreement. *Id.*

In a diversity suit, the Court applies the substantive law of the forum state. *Allison v. ITE Imperial Corp.*, 928 F.2d 137, 138 (5th Cir. 1991) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), and *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)).

The Court first looks to Louisiana Civil Code article 3540, which provides:

> All other issues of conventional obligations are governed by the law expressly chosen or clearly relied upon by the parties, **except to the extent that law contravenes public policy of the state whose law would otherwise be applicable under Article 3537.**

(emphasis added). In turn, Article 3537 provides:

> Except as otherwise provided in this Title, **an issue of conventional obligations is governed by the law of the state whose polices would be most seriously impaired if its law were not applied to that issue.**
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multi-state commercial intercourse, and of protecting one party from undue imposition by the other.

(emphasis added).

In this case, the parties have contacts with both Louisiana and Tennessee. Bell is domiciled in Louisiana, worked out a home office in Ouachita Parish, and conducted sales for L.P. Brown in a number of Louisiana parishes. Although L.P. Brown contends that Bell conducted work from his

home in Louisiana and used his home address on his business cards as a convenience, those are the facts and signify additional contacts with Louisiana. L.P. Brown did not require Bell to maintain any office in Tennessee nor list a Tennessee address on his business cards. On the other hand, it is also undisputed that Bell was L.P. Brown's only Louisiana employee, and the contract between the parties was formed in Memphis, Tennessee, where L.P. Brown is domiciled. Bell received his company vehicle, telephone, and computer from the Memphis office,[3] and he attended meetings there. Upon consideration, the first factor favors Tennessee, but, certainly, the contacts with Louisiana are not insignificant.

Moreover, the remaining factors strongly favor Louisiana.[4] The contract at issue is an employment contract, and Louisiana has long had a strong public policy in protecting its employees from restrictions on the common law right to work. *See SWAT 24 Shreveport Bossier, Inc. v. Bond*,

---

[3]The contract was initially offered in Alabama, and Bell's telephone number is a Georgia exchange, but neither party contends that Alabama or Georgia law should apply here. Nor does L.P. Brown challenge the jurisdiction of this Court.

[4]The Court does not ignore the provisions of Louisiana Civil Code article 3515, which provides:

> Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

However, article 3515 largely tracks the first factor in article 3537 and then turns to policy concerns, which this Court has addressed above.

2000-1695 (La. 6/29/01), 808 So.2d 294, 298. "Louisiana's strong public policy restricting these types of agreements is based upon an underlying state desire to prevent an individual from contractually depriving himself of the ability to support himself and consequently becoming a public burden. Because such covenants are in derogation of the common right, they must be strictly construed against the party seeking their enforcement." *Id.* (citations omitted).

The Louisiana Supreme Court recently held that "forum selection clauses are generally enforceable and are not per se violative of public policy in Louisiana, " but, in so doing, reaffirmed the unique nature of employment contracts. *Shelter Mut. Ins. Co. v. Rimkus Consulting Group, Inc. of La.*, 148 So.3d 871, 878 (La. 2014). The *Shelter* Court pointed out that LA. REV. STAT. 23:921A(2) "prohibits forum selection clauses in employment contracts unless the choice of forum clause 'is expressly, knowingly, and voluntarily agreed to and ratified by the employee **after the occurrence of the incident which is subject to the civil or administrative action**.'" *Id.* at 881 (emphasis added).[5] As explained in *Sawicki v. K/S Stavanger Prince*, 802 So.2d 598 (La. 2001),

> Louisiana Revised Statute 23:921A(2) is a strong expression of Louisiana public policy concerning forum selection clauses wherein the legislature clearly intended to allow Louisiana courts to adjudicate the claims of plaintiffs who have properly invoked their jurisdiction. Thus, suits validly filed in this state can remain here, despite forum selection clauses to the contrary unless the clause was expressly,

---

[5] LA. REV. STAT. 23:921(A)(2) provides:

The provisions of every employment contract or agreement, or provisions thereof, by which any foreign or domestic employer or any other person or entity includes a choice of forum clause or choice of law clause in an employee's contract of employment or collective bargaining agreement, or attempts to enforce either a choice of forum clause or choice of law clause in any civil or administrative action involving an employee, shall be null and void except where the choice of forum clause or choice of law clause is expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil or administrative action.

> knowingly, and voluntarily entered into and ratified after the occurrence of the incident which gives rise to the litigation.

*Id.* at 606; *see also Bell v. Rimkus Consulting Group, Inc. of La.*, 983 So.2d 927, 932 (La. App. 5 Cir., 2008) ("La. R.S. 23:921 A(2), a provision which was added by the legislature in 1999, is an expression of strong Louisiana public policy concerning forum selection clauses.").

Tennessee, in contrast, has no strong public policy on non-competition agreements and/or forum selection clauses in employment contracts. Rather, Tennessee generally upholds what it deems to be reasonable non-competition agreements, viewing such agreements as promoting stable business and employment relationships. *See Central Adjustment Bureau, Inc. v. Ingram*, 678 S.W.2d 28, 37 (Tenn. 1984); *see also Corp. Express Office Prods. v. Warren,* Nos. 01-2521 DBRE, 01-2667 DBRE, 2002 WL 1901902, at *28 (W.D. Tenn. May 24, 2002) ("Judicial enforcement of a noncompetition provision in an employment contract generally serves the public interest by promoting stability and certainty in business and employment relationships.") (citation omitted).

While L.P. Brown has downplayed its contacts with Louisiana, it cannot be disputed that it does business in this State in multiple parishes, employed Bell here, and allowed him to work from his home. Given those contacts and Louisiana's great interest in protecting employees' right to work, the Court finds that Louisiana law controls. The forum selection clause in the non-compete agreement will be enforced only if Bell expressly, knowingly, and voluntarily either agreed to or ratified the clause after his resignation.

The only written evidence of the partes' discussion of the non-compete agreement is the "Acknowledgment" [Doc. No. 6-4, Exh. 2] Bell signed at the conclusion of an exit interview at L.P. Brown's Memphis office on June 17, 2014. Among other items, Bell agreed that "[t]he procedures

9

concerning . . . non-compete restrictions . . . has [sic] been explained to me, and all of my questions on these topics have been answered . . . [and] this document accurately reflects all the . . . promises made during my Exit Interview with any and all members of management." *Id.* The Acknowledgment does not refer to the forum selection clause in any way, and this one brief statement in the Acknowledgment is insufficient to meet the requirements of LA. REV. STAT. 23:921A(2).

In addition to the Acknowledgment, the evidence is undisputed that Bell discussed the non-compete agreement with L.P. Brown's CEO, Jackson, and Sales Manager, King. Clearly, Bell sought and continues to seek relief from the restrictions contained in the non-compete agreement. However, there no evidence that Bell made a statement to Jackson or King or in any other way evinced an intent to agree or ratify the forum selection clause in the non-compete agreement.

Under these circumstances, this Court agrees with other federal district courts addressing this issue and finds that the forum selection clause contained in the non-compete agreement is null and void under LA. REV. STAT. 23:921A(2). *See Westbrook v. Pike Elec., L.L.C.*, 799 F.Supp.2d 665, (E.D. La. 2011) (applying LA. REV. STAT. 23:921A(2) and finding that "the choice of forum and choice of law provisions in the Employment Agreement without force under Louisiana law" where the plaintiff had not voluntarily agreed to or ratified those provisions after his resignation); *Frederic v. KBK Financial, Inc.*, 2000 WL 8055233 (E.D. La. June 22, 2000) (finding that, under LA. REV. STAT. 23:921A(2), "Louisiana law applies despite the choice of Texas law in the [Non-Disclosure and Non-Compete] Agreement" where the plaintiff had "not ratified that choice of Texas law after his resignation"). L.P. Brown argues that the facts of the cases are distinguishable, but the most pertinent fact is not: Bell did not expressly, knowingly, and voluntarily agree to or ratify the forum

selection clause in the non-compete agreement after his resignation. Thus, Bell's Motion for Summary Judgment is GRANTED to this extent, and the forum selection clause is DECLARED null and void.

### C.  Application of Non-Compete Agreement

Having determined that the forum selection clause is null and void, the Court must now determine if the non-compete agreement is enforceable under Louisiana law.

Louisiana Revised Statute 23:921C provides in pertinent part:

> Any person . . . who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer **within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment.** . . .

LA. REV. STAT. 23:921C.

In this case, the non-compete agreement prevents Bell from competing with his employer in "any U.S. cotton market," either "directly or indirectly" and from becoming "employed by or perform services in any capacity for any person or business entity that competes with the business of Employer" for a period of two years. [Doc. No. 6-3, Exh. 1, ¶ 7]. Thus, the non-compete agreement has a valid time restriction, but has no geographical restriction other than the "U.S. cotton market."

The Court finds that, under LA. REV. STAT. 23:921C, the non-compete agreement at issue is geographically overbroad and unenforceable. Accordingly, Bell's Motion for Summary Judgment is also GRANTED to this extent, and the non-compete agreement is DECLARED unenforceable. In light of the Court's Ruling, L.P. Brown's counterclaim is DISMISSED at its own costs.

### III.    CONCLUSION

For the foregoing reasons, Bell's Motion for Summary Judgment [Doc. No. 6] is GRANTED. The forum selection clause contained in the non-compete agreement between the parties is DECLARED null and void under LA. REV. STAT. 23:921A(2). Under Louisiana law, the non-compete agreement is geographically overbroad and is thus DECLARED unenforceable. Accordingly, L.P. Brown's counterclaim is DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 2nd day of February, 2015.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE